**Opinion issued August 3, 2021**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-20-00026-CR**

———————————

**CHRISTOPHER MALLETT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Case No. 1463856**

**MEMORANDUM OPINION**

A jury found appellant, Christopher Mallett, guilty of capital murder and assessed his punishment at life in prison without the possibility of parole. In two issues, Mallet argues that his trial counsel was ineffective for failing to have a jury

member struck for cause and that the evidence is insufficient to support his conviction because he was acting in self-defense.

We affirm.

## Background

The conflict leading up to the murder of the complainants, Glen Williams and Carl Williams, began at a convenience store several hours before the shootings occurred. A group of people, including Glen Williams and Mallett's girlfriend, Tiffany Oliver, were playing gaming machines at a convenience store. Glen Williams and Oliver had a verbal conflict, and Mallett intervened on Oliver's behalf. Two witnesses, Vickie Rhodes and Jennifer Lockett, saw Mallett with a gun at that time, and video from security cameras outside the store showed Mallett with a gun.

Oliver became concerned about Mallett's state of mind. She testified that he had been drinking and that he "has a temper" when he has been drinking. She decided to leave the store and hide from Mallett at a washeteria across the street. When Mallett finally decided to leave the store, she rode home with him. Mallett decided not to stay home, however. He drove to the Crystal Springs Apartments where Glen Williams lived.

Meanwhile, Glen Williams had also returned to the Crystal Springs Apartments, where he was spending time with his son, Carl Williams, and friends, Lisa Brass and Alexis Oluwo. Glen Williams and Brass were attempting to leave the

2

parking lot together when Mallett arrived. Mallett had brought his gun with him and displayed it while he made verbal threats to Glen Williams. Brass stated that Glen Williams was unarmed at the time. When Mallett fired his gun into the ground, Brass ran away to Williams's apartment. She told Carl Williams that someone was threatening Glen Williams with a gun. They heard some gunshots and Carl Williams picked up a gun of his own and ran to his father's side. Oluwo followed, and she saw Glen Williams kneeling in front of a nearby apartment. She also saw Mallett walking toward Carl and firing his gun. After Carl fell, Mallett sped away again. Both Glen and Carl Williams died from gunshot wounds.

Mallett was charged with capital murder. During voir dire, the trial court questioned the venire panel, asking, "How many of you on the panel have either been a victim or accused—either you or someone close to you either a victim or accused of some violent offense? I will let you define violent. Okay? It doesn't have to be a death." Venireperson 23 responded that her "[f]ather's spouse was shot." She further stated that the shooting occurred 23 years ago in Houston. The following exchange then occurred:

[Court]: How do you feel about serving on the jury where the charge is capital murder?

[Venireperson 23]: Not. . .

[Court]: In regards to what happened to your—

3

[Venireperson 23]: Uh-huh. Probably not able to stand—to see the whole thing—I don't know.

[Court]: It might affect you?

[Venireperson 23]: It might affect me.

No further questions were asked of this venireperson on this topic. Mallett's trial counsel attempted, unsuccessfully, to have a different venireperson struck for cause, and several other venirepersons were excused for unspecified reasons. Trial counsel used one of his peremptory strikes on Venireperson 23.

At trial, the State presented evidence from various witnesses, including Oliver, Brass, and Oluwo, about events leading up to the shooting and after. The State also presented forensic evidence indicating that two different calibers of guns were fired. Two casings came from the weapon used by Carl Williams. The remainder were all fired from the gun that was associated with Mallett. There was no gun recovered in or around the crime scene that was associated with Glen Williams. Finally, a gunshot-residue expert testified that both Glen and Carl Williams were tested for gunshot residue and had a limited amount of gunshot residue on their hands. The gunshot-residue expert testified that the limited result indicated that Glen and Carl Williams "could have had an association" with a firearm. The expert clarified that this "association" could have been caused by transfer of residue rather than by their own discharge of a weapon. She stated that the limited result could have occurred because they had been shot, or touched

4

something that contained gunshot residue, or had "somehow fallen with that cloud of gunshot residue of a gun when it was fired."

Mallett made a statement to police that was presented to the jury. In his statement, Mallett denied seeing Glen Williams that day, denied shooting either Glen or Carl Williams, and blamed a drug addict known as "Man" for the murders. Mallett testified at trial on his own behalf. His trial testimony contradicted his statement to police, and he admitted at trial that his statement to police was a lie. Mallett admitted to the altercation at the convenience store and that he later shot Glen and Carl Williams at the apartment complex. He testified that he shot them in self-defense because they both had guns and shot at him first before he returned fire.

The jury was charged on the offense of capital murder and on the defense of self-defense. The jury found Mallett guilty of capital murder. No motion for new trial or other evidence regarding counsel's strategy were adduced. This appeal followed.

## Ineffective Assistance

In his first issue, Mallett asserts that he received ineffective assistance of counsel because his trial counsel failed to have Venireperson 23 struck for cause and instead used a peremptory challenge.

## A.     Standard of Review

The Sixth Amendment to the United States Constitution guarantees the right to the reasonably effective assistance of counsel in criminal prosecutions. U.S. CONST. amend. VI; *see* TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. art. 1.05. To prove a claim of ineffective assistance of counsel, an appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). And an appellant's "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

In reviewing trial counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must

6

affirmatively demonstrate" the meritorious nature of the claim. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (internal quotations omitted). The trial record alone is rarely sufficient to show ineffective assistance. *Williams v. State*, 526 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). Generally, a silent record that provides no explanation for trial counsel's actions will not overcome the strong presumption of reasonable assistance. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007) (noting "presumption that trial counsel's performance was reasonably based in sound trial strategy").

## B. Analysis

Mallett contends that Venireperson 23 was biased or prejudiced against him, and thus, his trial counsel was ineffective in failing to ask the trial court to strike her for cause and instead using a peremptory strike to keep her from the jury. The record, however, does not support Mallett's contentions. We first observe that he has failed to establish that Venireperson 23 was biased against him. When the trial court asked prospective jurors about their past experiences with violent offenses, Venireperson 23 indicated that her father's spouse had been shot a number of years earlier. The trial court asked whether this experience would impact her ability to serve on the jury in a capital murder case, and she had answered equivocally that she would "[p]robably not [be] able to stand—to see the whole thing—I don't know," and

7

ultimately concluded that it "might affect" her. This equivocal language does not, as Mallett contends, compel a conclusion that Venireperson 23 ought to have been challenged for cause. *See, e.g.*, TEX. CODE CRIM. PROC. art. 35.16(a)(9) (providing that juror may be challenged for cause if she "has a bias or prejudice in favor of or against the defendant"); *Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009) ("The test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with the law. Before a prospective juror may be excused for cause on this basis, the law must be explained to him, and he must be asked whether he can follow that law, regardless of his personal views."). Furthermore, the record here is silent as to trial counsel's strategy in determining whether to challenge particular venirepersons for cause or how to use peremptory strikes, and we must presume that trial counsel's performance was effective. *See Lopez*, 343 S.W.3d at 143; *Goodspeed*, 187 S.W.3d at 392.

The Texas Court of Criminal Appeals has rejected two similar ineffective-assistance-of-counsel claims based on inadequate records. In *Murphy v. State*, the defendant's trial counsel used peremptory strikes against two jury panel members who counsel erroneously believed had been unsuccessfully challenged for cause. 112 S.W.3d 592, 600–01 (Tex. Crim. App. 2003). The Court of Criminal Appeals declared that, "[d]espite [trial] counsel's mistaken belief about the challenges for

cause, he may have ultimately utilized peremptory challenges against [those jury panel members] for any number of legitimate reasons," leaving "at least the possibility" that his use of those peremptory strikes "was reasonable trial strategy." *Id.* at 601. (internal quotation omitted). Thus, the court deferred to trial counsel's decision, concluding that counsel's performance was not deficient. *Id.*

In *Goodspeed*, the defendant's trial counsel did not ask any questions of the jury panel during voir dire and exercised two of his ten peremptory strikes on prospective jurors who had already been excused by the trial court. 187 S.W.3d at 392–94. The Court of Criminal Appeals observed that trial counsel had not been given the opportunity to respond to the ineffective-assistance-of-counsel claim, and thus, it could not conclude that his performance was deficient. *Id.* at 394 (also noting, even if trial counsel's use of peremptory strikes constituted deficient performance, defendant was still required to show "that they harmed him," which he had not done).

Here, Mallett's trial counsel did not use a peremptory strike on a venireperson who had already been excused by the trial court. Rather, for reasons that are not contained in the record, trial counsel decided to use a peremptory strike to remove Venireperson 23 from the panel instead of pursuing a strike for cause. Following the same reasoning set out in *Goodspeed* and *Murphy*, we hold that Mallett has not established that his trial counsel's performance fell below an objective standard of reasonableness in using a peremptory strike on Venireperson 23 rather than

9

attempting to have her struck for cause. *See Murphy*, 112 S.W.3d at 600–01; *Goodspeed*, 187 S.W.3d at 394.

We overrule Mallett's first issue.

## Sufficiency of the Evidence

In his second issue, Mallett challenges the sufficiency of the evidence to support the jury's rejection of his self-defense claim. According to Mallett, he "was the only witness to testify to how the entire encounter transpired with [Glen and Carl Williams], and the physical evidence from the crime corroborated [Mallett's testimony.]" Because he raised the claim of self-defense, the State had had to prove (1) the elements of capital murder beyond a reasonable doubt and (2) persuade the jury that Mallett did not kill Carl and Glen in self-defense. *See Rankin v. State*, 617 S.W.3d 169, 181–82 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd).

### A.     Standard of Review

Because the State bears the burden of persuasion to negate self-defense by proving its case beyond a reasonable doubt, we review both legal and factual sufficiency challenges to the jury's rejection of self-defense under the *Jackson v. Virginia* standard. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Rankin*, 617 S.W.3d at 182. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

10

elements of the crime beyond a reasonable doubt." *See Jackson*, 443 U.S. at 319; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). "[We] may not re-evaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the fact-finder." *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We defer to the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

## B. Applicable Law

A person commits murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE § 19.02(b)(1). A person commits the offense of capital murder "if the person commits murder as defined under Section 19.02(b)(1) and . . . (7) the person murders more than one person: (A) during the same criminal transaction." *Id.* § 19.03.

The Penal Code also provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a); *Rankin*, 617 S.W.3d at 182. Deadly force in self-

11

defense is justified when a person reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of murder, among other crimes. TEX. PENAL CODE § 9.32(a); *Rankin*, 617 S.W.3d at 182.

The defendant bears the burden of producing some evidence to support a claim of self-defense. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). Once the defendant produces some evidence raising self-defense, the State bears the burden of persuasion to show beyond a reasonable doubt that the defendant's actions were not justified. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991) (en banc). To meet its burden of persuasion, the State need not produce additional evidence but must prove its case beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 913. The jury is the sole judge of the credibility of defensive evidence, and it is free to accept it or reject it. *See Braughton*, 569 S.W.3d at 609 (citing *Saxton*, 804 S.W.2d at 914). If the jury finds the defendant guilty, it has made an implicit finding against any defensive theory raised by the defendant. *Saxton*, 804 S.W.2d at 914; *see also Zuliani*, 97 S.W.3d at 594.

## C. Legally Sufficient Evidence Supports Jury's Rejection of Self-Defense

Mallett testified that he acted in self-defense when he shot Glen and Carl. Mallett argues in his brief that Brass, who observed part of the altercation at the

12

apartment complex, "only saw [Mallett] shoot at the ground" and "[t]hat only leaves one person who can shed light on how the entire exchange occurred, and that is [Mallett]." Mallet testified that both Glen and Carl Williams had guns and that they fired a total of 8-10 shots in his direction. He further stated that he had fired at them to protect himself. Mallett also points to forensic evidence that both Glen and Carl Williams had a limited amount of gunshot residue on their hands.

However, the gunshot-residue expert testified that the limited result indicated that Glen and Carl Williams "could have had an association with a firearm." This determination does not, as Mallett contends, compel a conclusion that Glen and Carl both fired at him or were otherwise the aggressors in the confrontation. Furthermore, Mallett's own testimony and that of other witnesses provided that, after threatening Glen Williams with a firearm at the convenience store, Mallett had left with Oliver. He and Oliver remained briefly at home before he left again, bringing his gun with him, to visit the apartment complex where Glen and Carl Williams lived. This evidence undermines any reasonable belief that Mallett's conduct was immediately necessary to avoid a greater harm. *See Henley v. State*, 493 S.W.3d 77, 89 (Tex. Crim. App. 2016) ("Both self-defense and defense of a third person require that there be a reasonable belief in the immediate need to act."); *Sanchez v. State*, 418 S.W.3d 302, 310 (Tex. App.—Fort Worth 2013, pet. ref'd) (defendant "acted out of anger, not protective instinct, in pursuing the unarmed [complainant]"). The jury could

13

have concluded rationally that Mallett himself instigated the deadly confrontation by going, armed, to the place where Glen and Carl Williams lived. *See, e.g.*, *Braughton*, 569 S.W.3d at 606 ("The use of force is not justified in response to verbal provocation alone, or if the actor provoked the other's use or attempted use of unlawful force.") (citing TEX. PENAL CODE § 9.31(b)).

Regarding the immediate circumstances surrounding the shootings, Brass, who was with Glen Williams when Mallett arrived, testified that Glen Williams did not have a gun. Brass observed Mallett fire the first shots into the ground and ran to tell Carl Williams that someone was threatening Glen with a gun. Carl Williams approached Mallett with a gun, and forensic evidence identified two shell casings fired from the gun associated with Carl. All other shell casings recovered from the scene were associated with the single gun purportedly used by Mallett. Oluwo testified that when she arrived, Glen Williams was already on his knees and Mallett was walking toward Carl Williams and firing repeatedly at him. The jury was entitled to credit this testimony—indicating that Mallett was the first to fire a weapon, that Glen was unarmed, and that Carl responded to the threat against his father by appearing with his own gun—and to discredit Mallett's own assertion that he shot in self-defense. *See Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony.").

14

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that deadly force was not immediately necessary for Mallett to defend himself against either Glen or Carl and thus he did not act in self-defense. *See Braughton*, 569 S.W.3d at 612–13; *see also Jackson*, 443 U.S. at 318–19. In light of Mallett's testimony and the other evidence outlined above establishing that Mallett shot and killed both Glen and Carl in the same criminal transaction, we further conclude that the State proved beyond a reasonable doubt the elements of capital murder. *See* TEX. PENAL CODE § 19.03; *Rankin*, 617 S.W.3d at 181–82.

## Conclusion

We affirm the judgment of the trial court.


Richard Hightower
Justice

Panel consists of Justices Goodman, Hightower, and Rivas-Molloy.

Do not publish. TEX. R. APP. P. 47.2(b).