

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00430-CR

**GEOFFREY SCOTT ELDER,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 08-03658-CRF-85

## MEMORANDUM OPINION

Appellant Geoffrey Elder was convicted of two counts of aggravated assault of a public servant, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a), (b)(2)(B) (West 2011). In four issues, Elder contends that: (1) his Sixth Amendment right to counsel was violated when prosecutors allegedly used privileged notes drafted by Elder obtained during a search of Elder's jail cell; (2) his trial counsel was ineffective; and (3) the evidence supporting his conviction is insufficient. We affirm.

On the evening of July 1, 2008, College Station Police Officers Sean Beatty and

Travis Lacox were conducting surveillance in an area of town "notorious as an open-air drug market."  While conducting surveillance, the officers were hiding in the shadows so that they would not be conspicuous.  The officers observed what they believed to be several hand-to-hand narcotics transactions.  In particular, Officer Beatty recounted that an individual would approach cars that stopped in the street, exchange something through the open driver's window, and once the transaction was completed, the cars would drive away.

Later that evening, Officers Beatty and Lacox observed Elder drive his blue Jeep Cherokee up to the individual the officers had seen earlier that night conducting narcotics transactions.  The officers testified that Elder briefly spoke with the drug dealer and quickly drove the Jeep down the street so that he could turn around.  Upon arriving back at the scene, the drug dealer got into the Jeep, and the officers witnessed Elder and the drug dealer smoking what they believed to be crack cocaine.

After observing Elder apparently smoking crack cocaine, the officers approached the Jeep.  Officer Beatty stated that he approached the Jeep from the front while Officer Lacox approached from the driver's side.  Both officers noted that they were wearing their official police uniforms that night and that when they approached Elder's Jeep, they were illuminated well by the street lights.  Thereafter, both officers yelled, "Police! Stop!"  The driver's side window was open at that time so that the officers' voices were audible.  Upon seeing the officers approach, Elder leaned forward, started the Jeep, and put it in gear.  Officer Lacox once again yelled "Stop. Police" and instructed Elder to "Stay there" and to not "turn on the car."  According to Officer Lacox, Elder "applie[d]

the accelerator very firmly. You hear the engine rev up. As he's going[,] he takes the steering wheel and pulls to the left which is where I'm standing . . . ." Officer Beatty, who has received training from SWAT regarding high-risk warrants and analysis of perpetrators' demeanors, recounted that Elder did not have a panicked look on his face when they approached; instead, he looked "resolute." Apparently, Elder could have driven straight but, instead, decided to turn the steering wheel of the Jeep towards the officers to aid in his escape.

Elder missed hitting Officer Beatty by two feet. Officer Lacox tried to strike the Jeep's window with his flashlight as Elder drove away. In the process, Officer Lacox broke two fingers. Officer Lacox would have shot Elder during Elder's flight, but Officer Beatty was in his line of fire. Nevertheless, Officer Lacox described Elder's actions as a use of deadly force.

After Elder fled the scene, Officer Beatty immediately informed other officers about the incident. A blue Jeep Cherokee was found shortly thereafter that matched the description and license-plate number provided by Officer Beatty. Elder was found within a few blocks of the vehicle. Officers Beatty and Lacox subsequently identified Elder as the driver of the Jeep that had tried to run them over.

Elder was charged with two counts of aggravated assault of a public servant, and after a jury trial, Elder was convicted of the charged offenses. *See id.* He received twelve-year sentences for each count with the sentences ordered to run concurrently. Elder filed a motion for new trial, asserting numerous allegations that: (1) his constitutional rights were violated when prison officials searched his jail cell and seized

several documents; (2) his trial counsel was ineffective; and (3) the evidence is insufficient. After a hearing, the trial court denied Elder's motion for new trial and entered findings of fact and conclusions of law. This appeal followed.

## Sixth Amendment Right to Counsel

In his first issue, Elder contends that his Sixth Amendment right to counsel was violated because prison officials searched his jail cell and turned over to the prosecution privileged notes and mental impressions that were intended for his attorney. In analyzing this issue, we first note that a prisoner does not have a Fourth Amendment right to privacy in his jail cell. *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions."). Moreover, a "shakedown" search of a pretrial detainee's jail cell does not violate the Fourth Amendment or due process. *Block v. Rutherford*, 468 U.S. 576, 591, 104 S.Ct. 3227, 3235, 82 L.Ed.2d 438 (1984).

We further note that the State's intrusion into the attorney-client relationship violates a defendant's constitutional right to counsel only when the defendant is prejudiced by the violation. *Murphy v. State*, 112 S.W.3d 592, 602 (Tex. Crim. App. 2003) (noting federal circuit court split on issue of whether prejudice is presumed or must be proven and concluding: "In our view, calling for a showing of prejudice is the better rule in light of the wide variety of circumstances under which the privilege might be

breached") (citing *United States v. Morrison*, 449 U.S. 361, 365-66, 101 S.Ct. 665, 668-69, 66 L.Ed.2d 564 (1981); *Weatherford v. Bursey*, 429 U.S. 545, 555-59, 97 S.Ct. 837, 843-46, 51 L.Ed.2d 30 (1977)).

In any event, on appeal, Elder argues that the complained-of error in this issue "is structural and systemic." With regard to structural errors, the United States Supreme Court and the Texas Court of Criminal Appeals have stated the following:

> Structural errors that are not subject to a harm analysis include total deprivation of the right to counsel at trial, a judge who is not impartial, unlawful exclusion of members of the defendant's race from the grand jury, the right to self-representation at trial, and the right to a public trial.

*Mercier v. State*, 322 S.W.3d 258, 262 (Tex. Crim. App. 2010) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 1264-65, 113 L.Ed.2d 302 (1991)). In addition, "'[s]tructural rights' are those rights to which the constitutional harmless-error rule does not apply: if the defendant shows that the right was violated, appellate courts must reverse the conviction without any analysis of whether that error was harmful." *Phillips v. State*, No. PD-1402-09, 2011 WL 2409307, at *6 (Tex. Crim. App. June 15, 2011). Elder's appellate complaint with respect to the documents does not reconcile with the list of structural errors delineated in *Fulminante* and *Mercier*. *See Fulminante*, 499 U.S. at 309-10, 111 S.Ct. at 1264-65; *Mercier*, 322 S.W.3d at 262. Therefore, we cannot say that the complained-of error is structural, and as such, we apply a harm analysis to determine whether Elder's defense was prejudiced by the alleged error. *See Fulminante*, 499 U.S. at 309-10, 111 S.Ct. at 1264-65; *Mercier*, 322 S.W.3d at 262; *see also Phillips*, 2011 WL 2409307, at *6.

The record reflects that the State came into possession of the documents during an administrative search of Elder's jail cell. When reviewing the substance of the documents, it appears that some of the documents may have been protected by the attorney-client privilege and that one of the prosecutors in the case probably read the documents. However, the lead prosecutor, John Brick, testified that nothing was discovered from these documents that was not already known. Brick also stated: "Now, I turned those [the documents] over during the trial. We did not use any of those documents at trial. Nothing was ever admitted as evidence. [We d]id not even cross-examine him on any of the documents to counter any of his testimony." *See Murphy*, 112 S.W.3d at 602-03 (concluding no prejudice to defendant when prosecutor, who reviewed privileged materials seized from defendant's cell, "testified that he did not use any of the information in the three pages of material in preparing the case"). Furthermore, at the conclusion of the hearing on Elder's motion for new trial, the trial court concluded that "the information on the documents seized from the defendant's jail cell contained the same information as the Probable Cause Statement[s]," which were also admitted into evidence without any objection. Based on the foregoing, we conclude that the record supports a finding that Elder suffered no prejudice from any intrusion by the prosecution into his attorney-client relationship. *See Estrada v. State*, 313 S.W.3d 274, 305 (Tex. Crim. App. 2010); *see also Murphy*, 112 S.W.3d at 602-03 ("Because the proceedings were not adversely tainted by the intrusion into the attorney-client privilege, appellant is not entitled to a reversal."). We, therefore, overrule Elder's first issue.

**Ineffective Assistance**

In his second issue, Elder argues that his trial counsel was ineffective because he did not object or seek additional relief with respect to the State's procurement of Elder's "privileged attorney-client communications." The United States Constitution, the Texas Constitution, and article 1.051 of the Code of Criminal Procedure guarantee an accused the right to reasonably effective assistance of counsel. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.051 (West Supp. 2010); *see also Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prove ineffective assistance of counsel, Elder must show that: (1) trial counsel's representation fell below an objective standard of reasonableness, based on the prevailing professional norms; and (2) there is a reasonable probability that, but for trial counsel's deficient performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687-95, 104 S.Ct. at 2064-69; *Dewberry v. State*, 4 S.W.3d 735, 737 (Tex. Crim. App. 1999). Whether this test has been met is to be judged on appeal by the totality of the representation, not by isolated acts or omissions. *Rodriguez v. State*, 899 S.W.2d 658, 665 (Tex. Crim. App. 1995). Elder has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)).

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if Elder overcomes the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *See Strickland*, 466

U.S. at 689, 104 S.Ct. at 2065. The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). Moreover, the acts and omissions that form the basis of Elder's claims of ineffective assistance must be supported by the record. *Thompson*, 9 S.W.3d at 814. A silent record that provides no explanation for counsel's actions usually will not overcome the strong presumption of reasonable assistance. *Id.* at 813-14. To warrant reversal without affording counsel an opportunity to explain his actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

A review of the hearing on Elder's motion for new trial indicates that Elder's trial counsel testified. However, there is no testimony about counsel's trial strategy, including any explanation as to why an objection and a motion for mistrial were not advanced. In fact, the trial court, in its conclusions of law, specifically stated that "the defendant waived his ineffective assistance of counsel complaint by failing to ask his trial counsel questions concerning his actions at the hearing on the Motion for New Trial." Furthermore, the documents seized from Elder's jail cell were admitted into evidence during the hearing on Elder's motion for new trial. Elder testified at the motion for new trial hearing and identified the documents. None of the documents clearly indicated that they were confidential or privileged, though Elder asserted that he always wrote "legal" at the top of his writings that he intended to be confidential and

that the State had whited-out such markings. Moreover, Elder does not adequately explain how trial counsel's failure to object to the seizure of the documents or to file a motion for mistrial met the prejudice prong of *Strickland*. *See Strickland*, 466 U.S. at 687-95, 104 S.Ct. at 2064-69. Brick testified that the State did not use the documents to assist in the cross-examination of Elder and that the documents were neither used nor admitted into evidence during the guilt-innocence phase of the trial. *See Murphy*, 112 S.W.3d at 602-03. And, as mentioned earlier, the trial court concluded that "the information on the documents seized from the defendant's jail cell contained the same information as the Probable Cause Statement[s]." Therefore, based on our review of the record, we cannot say that Elder has satisfied his burden of proving his ineffective assistance of counsel claims. *See Strickland*, 466 U.S. at 687-95, 104 S.Ct. at 2064-69; *see also Thompson*, 9 S.W.3d at 813. Accordingly, we overrule Elder's second issue.

## Sufficiency of the Evidence

In his third and fourth issues, Elder contends that the evidence supporting his conviction is factually insufficient to prove that he knew the alleged victims were public servants and that he knowingly and intentionally threatened the alleged victims with imminent bodily harm. The Court of Criminal Appeals, in *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010), abandoned the factual-sufficiency standard in criminal cases; we need only consider the sufficiency of the evidence under the legal-sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

In light of *Brooks*, Elder sought and obtained leave to re-brief his sufficiency

issues, but he thereafter filed a notice conceding that the evidence is legally sufficient. Accordingly, his third and fourth issues are overruled.

Having overruled all of Elder's issues on appeal, we affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
          Justice Davis, and
          Justice Scoggins
Affirmed
Opinion delivered and filed February 8, 2012
Do not publish
[CR25]