

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00212-CR
No. 02-23-00213-CR
No. 02-23-00214-CR

_____

JULIAN ALEJANDRO ANDRADE, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court Nos. 1701461, 1701463, 1727805

Per Curiam Memorandum Opinion

## MEMORANDUM OPINION

## I. Introduction

Two months after pleading guilty to two drug offenses that carried deadly weapon findings and being placed on five years' deferred-adjudication community supervision, Appellant Julian Alejandro Andrade committed a third drug offense. In addition to the third offense, Andrade committed numerous violations of his community-supervision conditions, and the State filed its sixth amended petition to proceed to adjudication. After Andrade pleaded guilty to the three drug offenses and pleaded true to eleven of the thirteen violations alleged in the State's sixth amended petition and the trial court heard testimony, it adjudicated Andrade's guilt[1] and sentenced him as follows:

- In appeal number 02-23-00212-CR (trial court case number 1701461), guilty of possession with intent to deliver a controlled substance, namely tetrahydrocannabinol (THC) other than marijuana, of more than 400 grams for which he was sentenced to 50 years' imprisonment and assessed a $50,000 fine;[2]

---

[1]At trial, there were six cases, but only three are part of this appeal.

[2]The trial court initially pronounced a fine of $10,000 but then stated, "Let me back up," and assessed a $50,000 fine. The judgment, however, states that the fine assessed was $322. We modify the judgment to reflect the oral pronouncement. *See Clayton v. State*, No. 05-21-01038-CR, 2023 WL 2325512, at *5 (Tex. App.—Dallas Mar. 2, 2023, pet. ref'd) (mem. op., not designated for publication) (modifying the trial court's judgment to include the $10,000 fine assessed by the jury). *See generally Medrano v. State*, No. 02-19-00430-CR, 2020 WL 3410501, at *1 (Tex. App.—Fort Worth May 28, 2020, no pet.) (mem. op., not designated for publication) ("An appellate court has the authority to modify a judgment to make it speak the truth.").

- In appeal number 02-23-00213-CR (trial court case number 1701463), guilty of possession of more than 5 pounds but less than 50 pounds of marijuana for which he was sentenced to 10 years' imprisonment and was fined $10,000; and

- In appeal number 02-23-00214-CR (trial court case number 1727805), guilty of possession with intent to deliver more than 4 grams but less than 400 grams of THC other than marijuana for which he was sentenced to 75 years' imprisonment and was fined $10,000.

*See* Tex. Health & Safety Code Ann. §§ 481.113(d), (e), 481.121(b)(4).

In two issues, Andrade argues that the trial court committed reversible error by not ordering a presentence-investigation (PSI) report to be prepared and that the fifty-year and seventy-five-year sentences imposed by the trial court are disproportionate to other sentences that have previously been imposed for similar offenses. We conclude that (1) Andrade forfeited his complaint regarding the PSI report or, alternatively, that the absence of a PSI report did not affect his substantial rights and (2) his disproportionality argument does not pass the threshold test. Because a fine of $322 (instead of the orally pronounced $50,000 fine) is reflected in multiple places on the judgment and on the Revocation Restitution/Reparation Balance Sheet in appeal number 02-23-00212-CR (trial court case number 1701461), we modify the judgment and the Revocation Restitution/Reparation Balance Sheet to reflect the $50,000 fine and affirm the judgment as modified.[3] We also affirm the judgments in appeal

---

[3]The Order to Withdraw Funds, which the judgment references as "Attachment A," should similarly be modified to subtract the $322 fine that was not

3

number 02-23-00213-CR (trial court case number 1701463) and in appeal number 02-23-00214-CR (trial court case number 1727805).

## II. Background

An investigator testified that he first met Andrade on June 3, 2021,[4] when he arrested him based on a narcotics search warrant. During that search, police discovered $50,000 in currency and a watch estimated to be worth $75,000. The investigator said that in addition to the large quantity of cash, they found a large quantity of marijuana, a large quantity of THC, and multiple firearms—some of which were stolen. Andrade was charged with possession with intent to deliver a controlled substance (THC), possession of marijuana of more than five pounds but less than fifty pounds, and unlawful possession of a firearm. It was after these offenses that Andrade got tattoos on his chin showing his affiliation with AOB—a criminal street organization whose members are known to possess firearms and large quantities of marijuana. Andrade became the leader of AOB after its prior leader was arrested and sent to an Arizona prison.

---

pronounced and to add the $50,000 fine, thus modifying the total from $1,052 to $50,730.

[4]The investigator mentioned that the fugitive unit had stopped Andrade in March 2021. The investigator was not involved in that event and did not provide additional details, but the prosecutor later questioned Andrade's mother regarding whether she knew that her son had been charged with felony possession of marijuana (more than four ounces but less than five pounds) in March 2021.

4

In February 2022, Andrade pleaded guilty to the June 3, 2021 offenses. The trial court deferred adjudicating his guilt and placed him on five years' deferred-adjudication community supervision. According to the court-supervision officer, Andrade was "[g]enerally noncompliant" and had not shown significant willingness or ability to comply with his community-supervision conditions.

For example, on April 20, 2022, just two months after Andrade was placed on community supervision, approximately fifteen officers from the SWAT unit executed a narcotics-related search warrant for a Fort Worth residence. Although Andrade tried to run, police caught him and found a firearm on his person. The police also found approximately $5,500, multiple THC vape cartridges, and various baggies of marijuana in the residence, as well as baggies of marijuana in the car that was at the residence. Andrade was charged with possession with intent to deliver a Penalty Group 2 substance of more than 4 but less than 400 grams, possession of a useable quantity of marijuana of more than four ounces but less than five pounds, and unlawful possession of a firearm.

The State's brief[5] chronicles the pattern of Andrade's releases and new arrests, as well as the petitions to proceed to adjudication that followed the April 20, 2022 arrest:

- May 18, 2022: Released on a surety bond.

---

[5]We used the State's list of events as a guide but have added other relevant events.

5

- July 19, 2022: Tested positive for marijuana.

- August 24, 2022: Warrant issued after failed urinalysis.

- September 1, 2022: State's first amended petition to proceed to adjudication filed.

- September 7, 2022: Bond declared insufficient; warrant executed.

- September 14, 2022: Released on a new surety bond.

- October 21, 2022: State's second amended petition to proceed to adjudication filed.

- November 4, 2022: Tested positive for marijuana.

- November 16, 2022: Bond declared insufficient.

- December 2, 2022: Tested positive for marijuana and hydromorphone.

- December 6, 2022: Surety bond filed.

- December 16, 2022: Warrant issued.

- December 22, 2022 & May 25, 2023: State's third amended petition to proceed to adjudication filed.[6]

- June 5, 2023: State's fourth amended petition to proceed to adjudication filed.

- June 20, 2023: Failed to appear for court. Warrant issued.

- June 21, 2023: State's fifth amended petition to proceed to adjudication filed.

---

[6]It is unclear why there are two third amended petitions, but they are not the same document.

After Andrade failed to show up for the June 20, 2023 hearing, he was placed on Tarrant County's most-wanted list. The fugitive unit thereafter received a tip with an address for where Andrade was staying and with information that there were drugs and firearms at the residence. When police executed a search warrant at the residence on June 30, 2023, they arrested Andrade, who was in a garage that had been converted into a bedroom that held "items of contraband marijuana."

In July 2023, the State filed its sixth amended petition to proceed to adjudication, alleging thirteen violations of his community-supervision conditions—including committing new offenses, testing positive for controlled substances, consuming alcohol, and associating with people and visiting a place that was known to be harmful or of disreputable character. The trial court held a hearing at which Andrade pleaded true to eleven of the violations and pleaded guilty to the April 20, 2022 THC possession offense, as well as true to using or exhibiting a deadly weapon during that offense. After hearing evidence, the trial court adjudicated Andrade's guilt in each case and pronounced his sentences and fines. Andrade objected to the sentences, asserting his Eighth Amendment right against cruel and unusual punishment and his Fourteenth and Fifth Amendment rights to due process. The trial court implicitly overruled the objection.

Andrade subsequently filed a first amended motion for new trial in the fifty-year case and in the seventy-five-year case, raising disproportionate-sentence grounds.[7] The trial court denied the motions.

### III. Failure to Order a PSI Report

In his first issue, Andrade argues that the trial court committed reversible error by not ordering a PSI report to be prepared. Andrade acknowledges prior precedent from this court holding that he forfeited his complaint by not requesting a PSI report, but he argues that "the lack of a PSI [report] must be considered in relation to [his] second issue [challenging that his sentences are] disproportionate to other sentences with similar offenses." As discussed below, we conclude that Andrade forfeited his complaint and, alternatively, that any error stemming from the lack of a PSI report must be disregarded because it did not affect his substantial rights.

Andrade candidly cites to our opinion in *Bates v. State*, which held that at any time prior to the conclusion of the punishment hearing an appellant must specifically request a PSI report, object to proceeding with a punishment hearing in the absence of a PSI report, or file a motion seeking a PSI report in order to preserve error for our review. No. 02-20-00114-CR, 2021 WL 1229962, at *3 (Tex. App.—Fort Worth Apr. 1, 2021, no pet.) (mem. op., not designated for publication). Andrade concedes that he never requested a PSI report and does not attempt to show that he preserved his

---

[7]Andrade also filed a motion for new trial in the ten-year case, challenging only the deadly weapon finding.

complaint. Because Andrade did not specifically request a PSI report, object to proceeding with a punishment hearing in the absence of a PSI report, or file a motion seeking a PSI report at any time prior to the conclusion of the punishment hearing, we hold that he forfeited his right to complain of any error concerning the trial court's failure to order a PSI report. *See* Tex. R. App. P. 33.1(a)(1)(A); *Bates*, 2021 WL 1229962, at *3.

After acknowledging our prior precedent requiring preservation of his issue, Andrade then points to the portion of our *Bates* opinion in which we performed a harmless-error analysis. *See* 2021 WL 1229962, at *3. Andrade contends that "the lack of a PSI [report] must be considered in relation to [his] second issue." Specifically, Andrade argues that

> given the nature and character of the evidence supporting the trial court[']s sentence[s] of 50 years['] and 75 years['] imprisonment ([his] dealing marijuana and THC gummies), and given the character of the error (the lack of a PSI report in determining punishment for a first[-]degree felony) and how a PSI report might be considered in connection with the other evidence[,] such error did affect his substantial rights against cruel and unusual punishment as stated in the Eighth Amendment. Furthermore, [Andrade] argues that the lack of a PSI [report] must be considered in relation to [his] second issue of [sentences that are] disproportionate to other sentences with similar offenses.

Just as in *Bates*, we hold that any error stemming from the lack of a PSI report must be disregarded because it did not affect Andrade's substantial rights. *See id.* (first citing Tex. R. App. P. 44.2(b); and then citing *Whitelaw v. State*, 29 S.W.3d 129, 132 (Tex. Crim. App. 2000) (holding that any error in the failure to order the preparation of a PSI report is subject to review for harm under Rule 44.2(b)). In assessing the

9

impact an alleged Rule 44.2(b) error may have had on a punishment decision, we consider the entire record, the nature of the evidence supporting the punishment decision, the character of the error, and how it might be considered in connection with other evidence in the case. *See id.* Given the nature and character of the evidence supporting the trial court's sentences (his use of a deadly weapon in each offense, his picking up additional drug charges while on probation, his many probation violations, and the amounts of the drugs), and given the character of the error (the lack of a PSI report in determining punishment for drug charges that were classified as felonies) and how a PSI report might be considered in connection with the other evidence,[8] we hold that if Andrade had not forfeited his claim of error in the trial court's failure to order the preparation of a PSI report, nonetheless, such error did not affect his substantial rights. *See id.* Thus, we alternatively hold that even if Andrade did not forfeit this complaint, we are required to disregard the error. *See* Tex. R. App. P. 44.2(b); *Bates*, 2021 WL 1229962, at *3. We overrule Andrade's first issue.

## IV. Disproportionate Sentences

In his second issue, Andrade argues that the sentences imposed by the trial court are disproportionate to sentences that have been imposed for similar offenses.[9]

---

[8]As noted by the State, no evidence was introduced at the hearing on Andrade's motion for new trial showing what, if any, mitigating evidence would have been included in a PSI report had one been made. The State thus contends that "[Andrade's] argument[—]that it is possible a PSI [report] would have contained things in mitigation of punishment[—]improperly presupposes those things would have, in fact, actually *been* mitigating."

After conducting the threshold analysis, which is explained below, we conclude that there is not an inference of gross disproportionality; thus, we need not compare Andrade's sentence with those received by similar offenders in this jurisdiction and with those imposed for the same crime in other jurisdictions.

We have recently set forth the law that applies to Andrade's disproportionate-sentence issue as follows:

> "Generally, punishment assessed within the statutory limits is not excessive, cruel, or unusual punishment." *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.) (first citing *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); and then citing *Alvarez v. State*, 63 S.W.3d 578, 580 (Tex. App.—Fort Worth 2001, no pet.)). Indeed, a trial court has "essentially 'unfettered'" discretion to impose any sentence within the prescribed statutory range, *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006) (quoting *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990)), and any sentence within the statutory limits is virtually "unassailable" on appeal if it is based upon the sentencer's informed normative judgment. *Id.* at 324. But a narrow exception to this general rule exists: the Eighth Amendment prohibits noncapital punishment within the statutory limits if the sentence is grossly disproportionate to the offense. *Graham v. Florida*, 560 U.S. 48, 59–60, 130 S. Ct. 2011, 2021–22 (2010); *Harmelin v. Michigan*, 501 U.S. 957, 997–1001, 111 S. Ct. 2680, 2702–05 (1991) (Kennedy, J., concurring in part and concurring in judgment); *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). Although the "precise contours [of the gross-disproportionality exception] are unclear," *Harmelin*, 501 U.S. at 998–1001, 111 S. Ct. at 2703–05 (Kennedy, J., concurring in part and concurring in judgment), one thing is certain: it applies "only in the exceedingly rare or extreme case." *Simpson*, 488 S.W.3d at 322–23; *Chavez*, 213 S.W.3d at 323–24.

---

[9]Based on Andrade's brief, it is clear that he limits his argument to only two of his sentences—the fifty-year sentence and the seventy-five-year sentence. We therefore limit our analysis to these two sentences.

To determine whether a noncapital sentence qualifies for this uncommon and "somewhat amorphous" exception, we engage in a three-step review beginning with a threshold analysis comparing the gravity of the offense to the severity of the sentence. *Graham*, 560 U.S. at 60, 130 S. Ct. at 2022; *Simpson*, 488 S.W.3d at 323; *see also Chavez*, 213 S.W.3d at 323–24. Assessing the gravity of the offense requires us to consider (1) the harm that the defendant caused or threatened to the victim and to society, (2) the defendant's culpability, and (3) the defendant's prior adjudicated and unadjudicated crimes. *See Simpson*, 488 S.W.3d at 323. We weigh these factors against the defendant's sentence, looking to precedent for guidance as to the constitutional limits of proportional severity. *See Hutto v. Davis*, 454 U.S. 370, 374–75, 102 S. Ct. 703, 706 (1982) . . . (chastising lower courts for extending gross-disproportionality exception beyond the limits of precedent); *McGruder v. Puckett*, 954 F.2d 313, 317 (5th Cir. 1992) (holding that sentence was not grossly[ ]disproportionate in light of both the Supreme Court's and the Fifth Circuit's precedent). In the rare case in which this threshold analysis "leads to an inference of gross disproportionality," we proceed to steps two and three by comparing the defendant's sentence with those received by similar offenders in this jurisdiction and with those imposed for the same crime in other jurisdictions. *Simpson*, 488 S.W.3d at 323; *see also Solem v. Helm*, 463 U.S. 277, 296–300, 103 S. Ct. 3001, 3012–15 (1983) (applying steps two and three).

*Camacho v. State*, No. 02-23-00184-CR, 2024 WL 123493, at *2 (Tex. App.—Fort Worth Jan. 11, 2024, no pet.) (mem. op., not designated for publication); *see Coleman v. State*, No. 02-18-00471-CR, 2020 WL 241975, at *22 (Tex. App.—Fort Worth Jan. 16, 2020, no pet.) (mem. op., not designated for publication).

Andrade's disproportionality argument[10] does not pass the threshold test. A grand jury indicted Andrade for the June 3, 2021 offense of intentionally or knowingly

---

[10]Andrade states that his sentences are grossly disproportionate and "run[] afoul of the Eighth Amendment [to] the United States Constitution and Article I, Section 13 of the Texas constitution, which prohibit cruel and unusual punishment." Andrade does not argue that the Texas constitution provides greater protection than

possessing with intent to deliver a controlled substance, namely THC other than marijuana, of more than 400 grams, and included a deadly weapon allegation. This offense is a felony of the first degree punishable by imprisonment for life or for a term of not more than 99 years or less than 10 years and a fine not to exceed $100,000, if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, 400 grams or more. Tex. Health & Safety Code Ann. § 481.113(e). Andrade pleaded guilty to this charge, as well as to a second June 3, 2021 offense for possession of more than five pounds but less than fifty pounds of marijuana (that included a deadly weapon finding), and was placed on five years' deferred-adjudication community supervision. While on community supervision, Andrade committed another drug-related offense on April 20, 2022, that necessitated approximately fifteen SWAT officers to effectuate his arrest. A grand jury indicted him for intentionally or knowingly with intent to deliver a controlled substance, namely THC, of more than 4 grams but less than 400 grams[11] and for using or exhibiting a deadly weapon, namely a firearm, during the commission of the felony. This offense is a first-degree felony punishable by imprisonment for life or for

the federal constitution. Thus, we will analyze his cruel-and-unusual claim solely on federal grounds. *See Murphy v. State*, 112 S.W.3d 592, 596 (Tex. Crim. App. 2003) ("[B]ecause appellant does not argue that the Texas [c]onstitution provides, or should provide, greater or different protection than its federal counterpart, appellant's point of error is inadequately briefed.").

[11]The grand jury's indictment also included a Count 2 for intentionally or knowingly possessing a usable quantity of marijuana of more than four ounces but less than five pounds, but the State ultimately waived this count.

any term of not more than 99 years or less than 5 years and a fine not to exceed $10,000. *See id.* § 481.113(d); Tex. Penal Code Ann. § 12.32. Andrade also pleaded guilty to this charge. Andrade's drug offenses, during which he used or exhibited a deadly weapon, threatened significant harm to society, and his guilty pleas established his culpability. *See Simpson*, 488 S.W.3d at 323; *Camacho*, 2024 WL 123493, at *3.

As to Andrade's adjudicated or unadjudicated crimes before he was placed on community supervision, the record demonstrates that the fugitive unit stopped him in March 2021 and that he was arrested for possession of marijuana of more than four ounces but less than five pounds. Additionally, as touched on above, the record is replete with evidence of offenses and violations that Andrade committed while on community supervision. Moreover, Andrade failed to appear for the June 20, 2023 hearing, which led to his being placed on Tarrant County's most-wanted list.

Taking the *Simpson* factors together, we cannot say that Andrade's fifty-year and seventy-five-year sentences give rise to an inference of gross disproportionality.[12] *See* 488 S.W.3d at 323; *White v. State*, 495 S.W.2d 903, 905 (Tex. Crim. App. 1973) (holding that sixty-year sentence for selling marijuana was not cruel and unusual); *cf. Jenkins v. State*, 870 S.W.2d 626, 631 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)

---

[12]Because Andrade's disproportionality argument does not pass the threshold test, we need not compare his sentences to others for the same offenses in Texas and elsewhere. *See Camacho*, 2024 WL 123493, at *3 n.2; *Bolar v. State*, 625 S.W.3d 659, 666 (Tex. App.—Fort Worth 2021, no pet.); *see also Nunnally v. State*, No. 03-19-00807-CR, 2021 WL 4995502, at *5 (Tex. App.—Austin Oct. 28, 2021, no pet.) (mem. op., not designated for publication).

(holding that fifty-year sentence for .33 milligrams of cocaine was not cruel and unusual and stating that "[j]ust because a punishment might be excessive, does not make it cruel and unusual").

At the hearing on Andrade's first amended motion for new trial, he argued that his understanding was that he would not be sentenced to more years than his age at the time of the offenses, which was nineteen. He later said that his trial attorney had told him that he would be sentenced to twenty to thirty years' imprisonment. Andrade admitted that he had rejected the State's offer of thirty years' imprisonment. Andrade also admitted that he had been admonished multiple times that the first-degree punishment range is ten to ninety-nine years or life imprisonment and that the trial court could sentence him anywhere within that range. Although Andrade attempted to show that his case was like other possession cases in which the defendants had received much shorter sentences and argued that he did not have a history of violence, the record demonstrated that Andrade's case had aggravating factors, including his commission of multiple drug offenses and violations while on community supervision, his continual possession of firearms, his failure to appear for a hearing, and his being placed on Tarrant County's most-wanted list.

Furthermore, Andrade's fifty-year and seventy-five-year sentences were within the allowable range and were not the maximum sentence that he could have received.

*See* Tex. Health & Safety Code Ann. § 481.113(e); Tex. Penal Code Ann. § 12.32.[13] Nothing in the record shows that Andrade's fifty-year and seventy-five-year sentences constitute grossly disproportionate sentences or cruel and unusual punishment under the Eighth Amendment. Accordingly, we overrule Andrade's second issue.

## V. Conclusion

Having overruled Andrade's two issues but having determined that the judgment and the Revocation Restitution/Reparation Balance Sheet in 02-23-00212-CR (trial court case number 1701461) do not reflect the fine that was orally pronounced by the trial court, we modify the judgment and the Revocation Restitution/Reparation Balance Sheet to reflect a $50,000 fine, and we affirm the trial court's judgment as modified. We also affirm the trial court's judgments in appeal number 02-23-00213-CR (trial court case number 1701463) and in appeal number 02-23-00214-CR (trial court case number 1727805).

Per Curiam

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 31, 2024

---

[13]Although Andrade does not mention the $50,000 fine that was assessed with his fifty-year sentence, we note that was only half of the maximum fine that is allowed for that offense. *See* Tex. Health & Safety Code Ann. § 481.113(e).

16